United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANASTACIO GUERRERO, | ) | No. C 09-1305 SBA (PR) |
| | ) | |
| Petitioner, | ) | **ORDER DENYING PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS; AND** |
| v. | ) | **DENYING CERTIFICATE OF** |
| | ) | **APPEALABILITY** |
| DAVID B. LONG, Acting Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**INTRODUCTION**

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2006 conviction in the Santa Clara County Superior Court.  Respondent has filed an answer to the petition.  Petitioner has filed a traverse.

For the reasons discussed below, the petition is DENIED as to all claims.

**BACKGROUND**

**I.    Case History**

On September 19, 2006, a Santa Clara County jury convicted Petitioner of two counts of attempted premeditated murder, and one count each of simple attempted murder, first degree burglary, first degree robbery, and false imprisonment (Cal. Penal Code §§ 664, 187, 459, 460(a), 211, 215.5(a), 236, 237).  The jury also found true enhancements for firearm use in the commission of all counts except for the two counts of attempted premeditated murder (Cal. Penal Code § 12022.53(b)), and enhancements for great bodily injury in the commission of the simple attempted murder, burglary, and false imprisonment counts (Cal. Penal Code § 12022.7(a)).  (CT 238-251.)  On October 27, 2006, the trial court sentenced Petitioner to two consecutive life terms with the possibility of parole for the two counts of attempted premeditated murder, consecutive to a determinate term of twenty-seven years and eight months for the counts of simple attempted murder, robbery, and false imprisonment, as well as the enhancements for using a firearm and inflicting great

bodily injury.  (CT 278-283.)

The California Court of Appeal modified the sentence to stay the term for false imprisonment and the related enhancements, and affirmed the judgment, as modified, in an unpublished opinion dated July 16, 2008.  (Resp't Ex. 6.)  The California Supreme Court denied the petition for review on October 16, 2008.  (Resp't Ex. 8.)

The instant petition was filed on March 12, 2009, setting forth two claims as to insufficiency of the evidence and two claims as to instructional error.  On August 27, 2009, the Court issued an Order to Show Cause why the present writ should not be granted.  On December 23, 2009, Respondent filed an answer as well as a memorandum of points and authorities, and lodged a number of exhibits.  On May 10, 2010, Petitioner filed a traverse.

## II.   **Statement of Facts**

The following facts are taken from the opinion of the California Court of Appeal:

Maria Del Carmen Jauregui de Lechuga (Maria) and her husband Martin Lechuga (Martin) separated in April 2005.  Martin stayed at their home on Turtlerock Drive in San Jose, and Maria rented a nearby apartment with her mother.  Sometime later, Martin started seeing Esmeralda Solorio Camacho (Esmeralda), who occasionally stayed with him.

Esmeralda had previously been in a romantic relationship with defendant for about one year, but he had ended it.  Thereafter, they remained friends and did things together.  At times, he asked if she was dating, but she declined to answer.

In May or June 2005, defendant wanted to rekindle his relationship with Esmeralda but suspected that she was seeing someone and started following her.  He discovered that sometimes she stayed with Martin.  One night, he showed up at Martin's house, told Martin he was Esmeralda's brother, and asked to see her.  Outside, he seemed angry and told her he wanted them to get back together.  She told him she was not interested.  After that, he started to call her regularly and say he would wait for her.  At one point, she met him at his house and again told him she was not interested in a relationship with him.

Meanwhile, in June 2005, Maria and Martin's divorce became final, and she was awarded the house on Turtlerock Drive.  On July 13, Maria got the keys from Martin, and that night he and Esmeralda stayed in a hotel.  Early the next morning, defendant called Esmeralda to say that his father had died.  When he asked where she was, she lied and said she was at home.

The next morning at 5:00 a.m., defendant broke into the Turtlerock Drive house.  Around 10:00 a.m., Maria arrived there.  Inside she heard a noise, and, when she turned, defendant came at her and pointed a gun at her head.  He was dressed in black and wore a ski mask and gloves.  Maria screamed and grabbed for the gun.  Defendant covered her mouth with his hand and then dragged her into a bedroom.  He

2

threw her onto the floor, straddled her, and started to slap her, repeatedly saying, "Didn't you tell me I was the only man?" Maria screamed. Defendant dropped his gun and tried to close her mouth with duct tape, but it would not stick. Then he tried to tie a pillowcase around her head and over her mouth, but she pulled it away. When he put his hand over her mouth, she bit him. Finally, he grabbed a pillow, put it over her face, and pressed down. She could not breathe and eventually stopped struggling. He continued to hold the pillow for another 20 seconds and then removed it.

At that point, defendant apologized to Maria, saying he thought she was someone else whom he had wanted to kill. He would not tell her who, saying only that he had made a mistake. He asked her to forgive him and told her he did not want to go to jail. He then said he wanted to leave and tied her hands and feet to the bed. He also tried to push a mattress on her but gave up when she pleaded that it would kill her. He asked for her car keys, and she told him where they were.

Before leaving, defendant removed his ski mask. He left with some jewelry that he had taken from a safe in the bedroom closet and some engraved pens that were in a cabinet. After a while, Maria freed herself, went outside, and, with the help of a mailman, called the police.

Later that morning, police spoke to Esmeralda, and she called defendant. He denied having anything to do with the incident at the house. The next day, the police arrested him and searched his house. They found a loaded gun, rope, condoms, and dark clothing. Defendant initially denied having been at the house but later admitted that he had gone there with a ski mask, a gun, gloves, and rope. He said he wanted to find out more about Esmeralda's relationship with Martin. He thought having a gun would calm Martin down. He was there for around five hours, and at 10:00 a.m., he heard a woman enter. She would not be quiet, so he put his hand over her mouth and dragged her into the bedroom. She bit his hand, and he tried unsuccessfully to tape her mouth shut. All this time, she fought him and tried to get away. He put a pillow over her head to keep her quiet and told her that she was not the person he was looking for and had not come to kill her. He then tied her up and left, taking property with him to make it look like a robbery.

(Resp't Ex. 6 at 2-4).

## DISCUSSION

### I.     Standard of Review for State Court Decisions

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may

grant a petition challenging a state conviction or sentence on the basis of a claim that was

"adjudicated on the merits" in state court only if the state court's adjudication of the claim:

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d).  A state court has "adjudicated" a

3

petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

**A.     Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

**1.     Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether

4

constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court.  Williams, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established."  Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2.    **"Contrary To"**

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  Williams, 529 U.S. at 406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3.    **"Unreasonable Application"**

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411; accord

Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it.  Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard.  Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point).  After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously a afforded them.

Id.  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

**B.      Sections 2254(d)(2), 2254(e)(1)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

6

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor, 366 F.3d at 999-1000.  In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id.  First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000.  The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id.  Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id.  According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.3d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's claims.

## II.   Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b),(c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  The

parties do not dispute that Petitioner has exhausted his claims.  The Court, therefore, considers Petitioner's claims on the merits.

**III.**    **Legal Claims**

Petitioner raises four claims in his petition: (1) there was insufficient evidence to support a conviction for robbery; (2) the trial court erred in instructing the jury on the robbery charge; (3) there was insufficient evidence to support a conviction for simple attempted murder; and (4) the trial court erred in giving the jury instruction on the possession of recently stolen property -- CALCRIM No. 376 -- because it diminished the prosecutor's burden of proof on the robbery charge.

**A.**    **Insufficiency of Evidence**

Petitioner contends that his convictions for robbery and attempted murder of Maria were not supported by sufficient evidence.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  "[A] state prisoner who alleges that the evidence in support of the state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim," Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles the petitioner to federal habeas relief, id. at 324.

In a collateral review of a state court conviction, "[a] federal tribunal does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt." Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993).  "The federal court determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319 (emphasis in original)).

Furthermore, under AEDPA, the federal habeas court applies those standards with an additional layer of deference, asking whether the decision of the state appellate court reflects an unreasonable application of Jackson and Winship to the facts of the case.  Juan H. V. Allen, 408 F.3d 1262, 1274-1275 (9th Cir. 2005).

1.    **Robbery Conviction**

Petitioner claims that his conviction for robbery was not supported by sufficient evidence on the essential element that the taking was by means of force or fear.  (Pet'r Ex. A at 5-8.)  Petitioner acknowledges that he "took some jewelry from a safe to make it look like the intruder was a thief."  (Id. at 7.)  However, Petitioner contends that there was no evidence that the force applied to Maria "was connected with the theft"; in other words, no evidence that "the motive for the assault on [Maria] was to enable [Petitioner] to escape with the loot."  (Id.)

As stated above, evidence is constitutionally sufficient to support a conviction when "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319.  That standard is applied with explicit reference to the substantive elements of the criminal offense as defined by state law.  Id. at 324 n.16; Sarausad v. Porter, 479 F.3d 671, 678 (9th Cir. 2007), reversed on other grounds by Waddington v. Sarausad, 555 U.S. 179 (2009).

As a threshold matter, Petitioner appears to confuse "motive" and "intent" in describing the essential elements of robbery under California law.  As Petitioner correctly states, "the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal . . . ."  (Pet'r Ex. A at 6 (quoting People v. Green 27 Cal. 3d 1, 53 (1980)).)  However, this does not mean, as Petitioner appears to suggest, that the motive for the assault must be the desire to escape with the stolen items.

Under California law, robbery comprises elements embracing the use of force or fear to effect a taking from the victim and also an intent to steal accompanying the use of such means.  People v. Waidla, 22 Cal. 4th 690, 737 (2000) (internal citations omitted); see also Cal. Penal Code § 211.  Intent to steal must concur with the application of force, and is an element that must be proved for conviction.  On the other hand, "motive," that is, "the reason a person chooses to commit a crime," is not an element of a robbery.  People v. Wilson, 43 Cal. 4th 1, 22 (2008).  The reason for the crime is distinct from the required mental state such as intent or malice.  Id. (explaining "force instruction stating that 'robbery must be motivated by the intent to steal' did not transform such

intent into motive.").  While Petitioner cites to <u>People v. Green</u> in support of his claim, that case makes clear that, "desire for personal gain . . . is not an element of the crime [of robbery] in California."  27 Cal. 3d 1, 57 (where court held there was sufficient evidence on robbery conviction for the taking of victim's clothing, purse and rings as part of a preconceived plan to destroy them and cover up her murder).

To the extent that Petitioner claims there was insufficient evidence that the <u>motive</u> for the assault was to enable him to escape with the stolen items, that argument fails because, as noted, motive is not an essential element of robbery under California state law.  Petitioner need only have <u>intended</u> to permanently deprive Maria of the stolen items at the time that he used force to escape with them.

Turning to the question of intent, the state appellate court rejected the claim of insufficiency of the evidence as to the robbery conviction, stating:

> Defendant asserts that he came to the house to attack Esmeralda and Martin.  He took the property to make it look like a robbery and then waited hours for them to arrive.  When Maria arrived, he attacked her.  Under the circumstances, he argues that the attack was unrelated to and not motivated by an intent to steal.  Thus, he claims the evidence failed to establish the requisite connection between force and intent to steal to support a conviction for robbery.  We disagree.

> The record does not establish when defendant took the property -- i.e., either before Maria arrived, or after he tied her up.  He told the police that he entered the house and "was looking around . . . for information about [Esmeralda] and the male occupant."  He said he was there for five hours and started to fall asleep.  And he said that he took the property to make it look as if the motive for the attack had been robbery, but he did not say when he took it.  Maria testified that after defendant tried to suffocate her, he apologized, said he wanted to leave, and tied her hands and feet to the bed.  He also tried to put a mattress on top of her, but stopped when she pleaded with him.  From her position, she could not see whether he went into the closet before he left the room.  She said she just heard some noises.

> Regardless of when defendant first took the property, the record supports his robbery conviction.

> Defendant's admission that he wanted the incident to look like a robbery and the fact that he took property with him when he left supports a finding that he intended to steal before he entered the house and maintained that intent throughout the entire episode.[1]  Thus, even if, as defendant suggests, he took the property before Maria arrived, the jury reasonably could have found that later, after he realized that Maria was not Esmeralda, he used force with the intent to retain the property and escape

---

[1] At oral argument, defendant conceded that he entered the house with the intent to steal.

10

with it.  Alternatively, if defendant took the property after tying Maria up, the jury reasonably could have found that he used force with the intent to both take and carry away the property so as to make the episode look like a robbery.  The record supports both factual scenarios, and either one is sufficient to sustain defendant's conviction.  (*People v. Seaton* (2001) 26 Cal.4th 598, 640, 644.)

Moreover, that defendant may have had other reasons for initially attacking Maria and later using force to restrain her does not preclude a conviction for robbery because defendant may have simultaneously entertained multiple and independent objectives in using force, including the intent to steal.

(Resp't Ex. 6 at 9-10 (footnote renumbered).)

Here, the state appellate court relied on credible and persuasive evidence that Petitioner used force and fear in relation to the theft.  Specifically, the following evidence support the finding that Petitioner harbored an intent to steal at the time he used force to either obtain or retain the property and escape with it: (1) Petitioner's admission that he wanted the incident to look like a robbery; (2) the victim's testimony that Petitioner continued to use force to restrain her even after realizing she was not the person he had planned to attack; and (3) evidence that Petitioner took the stolen property with him when he left.  (Id.)  In addition, during oral argument before the state appellate court, Petitioner conceded that he entered the house with the intent to steal.  (Id. at 10 note 4.)  In his petition before this Court, Petitioner specifically states that, at trial, it was "undisputed [Petitioner] formed the intent to take the jewelry 'before . . . he used force.'"  (Pet'r Ex. A at 10.)

It may be true that Petitioner could have taken the property and fled without the use of force if his sole intent were to obtain the property.  However, as Petitioner acknowledged, he had a larger purpose that included robbery to make the attack appear driven by theft.  As the state appellate court recognized, that dual intent does not preclude a conviction for robbery.  (Resp't Ex. 6 at 10.)  In light of the admission and the taking of property, the state appellate court reasonable applied Jackson in concluding that there was substantial evidence for a rational trier of fact to find that Petitioner intended to permanently deprive when he used force to escape with the property.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## 2.    Attempted Murder Conviction

Petitioner also challenges his conviction for attempted murder of Maria because he argues there was insufficient evidence of intent to kill.  (Pet'r Ex. A at 11.)  "Attempted murder requires the

specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." People v. Superior Court, 41 Cal. 4th 1, 7 (2007); Cal. Penal Code § 21(a).  Citing People v. Miller, 2 Cal. 2d 527 (1935), Petitioner argues that his conduct was "equivocal" in nature and therefore it cannot be said with certainty whether he intended to kill Maria or merely to quiet her so that he might escape.  (Pet'r Ex. A at 15.)  In support of the contention that he did not intend to kill Maria, Petitioner points primarily to the fact that following the initial attack, he told Maria that he had intended to kill someone else, and that he wanted to leave.  (Id. at 11, 13.)

On direct appeal of Petitioner's criminal conviction, the state appellate court held that the record supported the jury's finding that Petitioner specifically intended to kill Maria, stating:

> Defendant immediately pointed a gun at Maria, dragged her into a back bedroom, threw her down, and straddled her, while repeatedly saying, "Didn't you tell me I was the only man?"  This evidence supports a finding that defendant intended to kill Maria believing that she was Esmeralda.  Indeed, defendant later admitted to Maria that he had come to kill someone else.
>
> Defendant argues that the jury reasonably could not have found that he mistook Maria for Esmeralda and intended to kill her.  He notes that Maria and Esmeralda were not related, and there was no evidence that they looked alike.  Although these circumstances support his argument, they do not preclude a finding of mistaken identity.  On the contrary, when defendant first encountered Maria, he was wearing a ski mask, which could have affected his vision.  Moreover, his repeated statement "Didn't you tell me I was the only man" indicates that he thought he was attacking Esmeralda.  Maria certainly had never told defendant that he was the only man, and defendant's use of "you" could only have been a reference to Esmeralda.
>
> We further agree with the Attorney General that, apart from mistaking Maria for Esmeralda, defendant's subsequent conduct shows an intent to kill.  After defendant repeated his statement, Maria screamed and tried to yell for help.  Defendant dropped his gun, tried to tape her mouth shut, put a pillowcase around her head and over her mouth, and then pushed a pillow onto her face, keeping it there for 20 seconds after she had stopped struggling.  This conduct reasonably reflects an attempt to suffocate Maria and supports a finding of intent to kill.
>
> Defendant's reliance on People v. Miller (1935) 2 Cal.2d 527 (Miller) is misplaced.  There, after threatening a man named Jeans, the defendant brought a rifle to a ranch owned by a constable.  He appeared to load it and then walked toward the constable and Jeans.  However, he did not aim or even lift the rifle.  Jeans fled, and the constable took the gun from the defendant without resistance.  (Id. at p. 529.)  In finding insufficient evidence of attempted murder, the court explained, "so long as the equivocal quality [of the defendant's conduct] remains no one can say with certainty what the intent of the defendant is.  As stated in United States v. Ford [(1888)] 34 Fed. 26, 27, 'the intention of the actor can alone be clearly ascertained by the movements which he had made to complete his design.'"  "In the present case up to the moment the gun was taken from the defendant no one could say with certainty whether the defendant had come into the field to carry out his threat to kill Jeans or

12

merely to demand his arrest by the constable.  Under the authorities, therefore, the acts of the defendant do not constitute an attempt to commit murder."  (*Id.* at pp. 531-532.)

Here, by contrast, defendant lay in wait on Turtlerock Drive with the intent to kill Esmeralda and Martin.  Indeed, defendant does not challenge his convictions for attempted premeditated murder.  Moreover, his attempt to suffocate Maria with the pillow is not comparable to the equivocal conduct in *Miller*.

In short, the record supports the jury's finding that defendant intended to kill the woman he encountered in the house, and his conduct toward her comprised direct but ineffectual acts toward realizing his goal.

(Resp't Ex. 6 at 6-8 (footnote omitted).)

Petitioner's allegations do not call into question the reasonableness of the state appellate court's conclusion that the evidence was sufficient to support his conviction for attempted murder of Maria.  The state appellate court reviewed the evidence supporting the conviction, including Petitioner's lying in wait, dragging the victim into a bedroom at gunpoint, yelling at her, throwing her down, and straddling her because, as he explained, he believed her to be the ex-girlfriend he intended to kill.  Furthermore, as the state appellate court noted above, the act of putting a pillow over the victim's face and holding it there for twenty seconds after she stopped struggling is not comparable to the "equivocal" conduct described in <u>Miller</u>.  The record shows that Petitioner physically attacked the victim, suffocating her until she stopped struggling.  Therefore, the state appellate court reasonable applied <u>Jackson</u> in concluding that the evidence presented was sufficient for a rational trier of fact to have found the essential elements of attempted murder beyond a reasonable doubt.  Thus, the state appellate court's rejection of Petitioner's insufficiency of the evidence claim relating to his conviction for attempted murder was not contrary to or an unreasonable application of clearly established federal law.  Accordingly, Petitioner's claim for habeas corpus relief is denied.

**B.**      **Instructional Error**

Petitioner contends the trial court gave an inadequate robbery instruction and an erroneous instruction on the possession of recently stolen property -- CALCRIM No. 376.  The California Court of Appeal summarized the robbery instructions as follows:

[T]he court instructed the jury that to convict the defendant of robbery, the People

13

had to prove that "(1) the defendant took property that was not his own; [¶] (2) The property was taken from another person's possession and immediate presence; [¶] (3) The property was taken *against the person's will;* [¶] (4) *The defendant used force or fear to take the property or to prevent the person from resisting* and; [¶] (5) *When the defendant used force or fear to take the property he intended to deprive the owner of it permanently* or to remove it from the owner's possession for a period of time that the owner will be deprived of the major portion of the value or enjoyment of the property. [¶] *The defendant's intent to take the property must have been formed before or during the time he used force or fear.* If the defendant did not form this required intent until after using the force or fear then he did not commit robbery." (Italics added; see CALCRIM No. 1600.) The court further instructed the jury that "[p]roperty is within a person's immediate presence if it is sufficiently within his or her physical control that he or she could keep possession of it not prevented by force or fear." In addition, the court instructed on the lesser offense of grand theft -- i.e., the taking without the use of force or fear.

(Resp't Ex. 6 at 12.)

The trial court also gave the CALCRIM No. 376 instruction to the jury as follows:

If you conclude that the defendant knew he possessed property and you conclude that the property had, in fact, been recently stolen, you may not convict the defendant of robbery or burglary or grand theft based on those facts alone. However, if you also find that the supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove that he committed robbery or burglary or grand theft. [¶] The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of robbery or burglary or grand theft.

(Id. at 13-14.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (""[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982). A habeas petitioner is not entitled to relief unless the instructional error caused "actual prejudice," meaning it had a "substantial and injurious effect or influence in determining the jury's

14

verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

### 1.  Robbery Instruction

Petitioner alleges the robbery instruction was inadequate, claiming that the trial court violated his constitutional right to due process by refusing to instruct the jury on the issue of whether the force applied was motivated by an intent to permanently deprive one of property.  (Pet'r Ex. A at 9.)  Specifically, the state appellate court construed Petitioner's claim as follows: the trial court failed to instruct the jury that "there is no robbery if the thief had the opportunity to flee without using force, but remained and applied force for an *unrelated* purpose."  (Resp't Ex. 6 at 11 (italics in original).)

Due process requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense."  Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  Therefore, a criminal defendant is entitled to adequate instructions on the defense theory of the case.  See Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence).

However, the defendant is not entitled to an instruction embodying the defense theory if the evidence does not support it.  See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  Nor is the defendant entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory. United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979), cert. denied, 445 U.S. 966 (1980).

Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury.  See Duckett v. Godinez, 67 F.3d at 745.  An examination of the record is required to see precisely what was given and what was refused and whether the given instructions adequately embodied the defendant's theory.  See Tsinnijinnie, 601 F.2d at 1040.  In other words, it allows a determination of whether what was given was so

prejudicial as to infect the entire trial and so deny due process. See id.

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. See Walker v. Endell, 850 F.2d at 475-76 (citing Henderson v. Kibbe, 431 U.S. 145, 155(1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy burden." Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson, 431 U.S. at 155). The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001) (quoting Henderson, 431 U.S. at 156)).

Here, the record does not support Petitioner's claim that the omitted instruction interfered with the opportunity to present a complete defense or otherwise denied Petitioner due process of law. Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. In accordance with that definition, the trial court properly instructed the jury on the elements of robbery, including the concurrence of force and intent to permanently deprive one of property.

The trial court instructed that, as an element of robbery, the people had to prove, "When the defendant used force or fear to take the property he intended to deprive the owner of it permanently . . . ." (Resp't Ex. 6 at 12.) The trial court further instructed as follows: "The defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear than he did not commit robbery." (Id.) Additionally, the trial court instructed on the lesser included offense of grand theft -- a taking without the use of force or fear. (Id.)

As such, the jury was certainly given instructions embodying the defense theory of the case -- that force was not used with the intent to deprive. As the state appellate court held, "we find no reasonable likelihood that jurors thought they could convict defendant of robbery even though they found that his use of force was unrelated to the theft and defendant's intent to permanently deprive." (Id. at 13.) If, in accordance with the trial court's instructions, the jury found that when Petitioner

used force he intended to permanently deprive the owner of the property, the state appellate court determined that there was no reasonable likelihood that the jury found the use of force wholly unrelated to the theft.  (Id.)  This Court concurs in that assessment.  If the jury found the use of force was unrelated to an intent to commit theft, the jury could have found Petitioner guilty of grand theft, on which the trial court also instructed the jury.

Consequently, the failure to give the requested instruction did not have a "substantial and injurious effect" on the verdict so as to cause Petitioner "actual prejudice."  Brecht, 507 U.S. at 637.  Therefore, he is not entitled to habeas relief on this claim.

### 2.   CALCRIM No. 376

Petitioner also claims that CALCRIM No. 376 impermissibly altered the prosecutor's burden of proof on the robbery charge in violation of his Fifth, Sixth, and Fourteenth Amendment rights.  (Pet'r Ex. A at 15-16.)  Petitioner asserts that the instruction -- particularly the use of the word "slight" in reference to supporting evidence -- "injected a standard of proof into the jurors' deliberations that was less stringent than the constitutionally required standard of proof beyond a reasonable doubt."  (Id.)  The state appellate court rejected Petitioner's claim concerning CALCRIM No. 376 on the grounds that it and its predecessor, CALJIC No. 2.15, have repeatedly withstood similar challenges to their constitutionality.  (Resp't Ex. 6 at 14.)

The Due Process Clause of the Fourteenth Amendment prohibits the use of evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt on every essential element of a crime.  See Yates v. Evatt, 500 U.S. 391, 400-03 (1991), overruled on other grounds, Estelle, 502 U.S. at 72 n.4; Carella v. California, 491 U.S. 263, 265-66 (1989); Francis v. Franklin, 471 U.S. 307, 313 (1985); Sandstrom v. Montana, 442 U.S. 510, 520-24 (1979).  Thus, in analyzing whether CALCRIM No. 376 creates an evidentiary inference that violates due process, the first step is to determine whether the instruction creates a mandatory presumption or a mere permissive inference.  See United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

"A mandatory presumption instruction tells the jury that it must presume that an element of a

17

crime has been proven if the government proves certain predicate facts." Id.  By contrast, "a permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts."  Id.  An instruction that creates a permissive inference does not shift the burden of proof or relieve the state of its burden of persuasion because "it still requires the state to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." Francis v. Franklin, 471 U.S. 307, 314 (1985).

A permissive inference does not violate due process if can be said "'with substantial assurance'" that the inferred fact is "'more likely than not to flow from the proved fact on which it is made to depend.'" County Court of Ulster County v. Allen, 442 U.S. 140, 166 & n.28 (1979) (quoting Leary v. United States, 395 U.S. 6, 36 (1969)).

Here, the record does not support Petitioner's claim that the challenged instruction lessened the prosecution's burden of proof or otherwise denied Petitioner due process of law.  First, as the state appellate court recognized, California courts have held that CALCRIM No. 376 creates a constitutionally valid permissive inference.  (Resp't Ex. 6 at 14.)  The state appellate court further stated as follows:

> CALCRIM No. 376, like CALJIC NO. 2.15, "correctly prohibits the jury from drawing an inference of guilt solely from conscious possession of recently stolen property but properly *permits* the jury to draw such an inference where there is additional corroborating evidence.  As long as the corroborating evidence together with the conscious possession could naturally and reasonably support an inference of guilt, and that inference is sufficient to sustain a verdict beyond a reasonable doubt, we discern nothing that lessens the prosecution's burden of proof or implicates a defendant's right to due process."

(Id. (italics added).)  Thus, CALCRIM No. 376 merely requires that additional evidence, though it may be "slight," must be found to support the permissive inference of guilt created by conscious possession of stolen property.

Second, the state appellate court pointed out that "[h]ere, the issue was whether guilt may be inferred from the possession of recently stolen property."  (Id. at 15.)  The inferred fact that Petitioner was guilty of the robbery more likely than not flowed from the proved fact that he possessed the recently stolen property at issue in this case.  The record shows that the stolen property at issue included jewelry and engraved pens belonging to Martin and Maria.  Both Martin

18

and Maria testified that they did not willingly give those items to Petitioner.  (RT 63-65, 94-96.)  A police officer testified that Petitioner claimed to have taken the items to make the entire incident appear as a robbery.  (2 RT 366-367).  Those items were later found in Petitioner's possession.  (2 RT 367-370.)  Moreover, the record shows ample evidence demonstrating Petitioner's guilt beyond mere possession of the stolen property, including evidence that he continued to use force by tying the victims hands together after he realized she was not the person he had meant to attack, as well as his own admission that he took the aforementioned items to make the attack look like a robbery.  (2 RT 365-367.)  Because the record shows that Petitioner possessed the stolen jewelry and pens, and that he used force or fear to accomplish the taking of those items, it can reasonably be inferred that he was guilty of robbery.

Finally, the state appellate court concluded that CALCRIM No. 376 was not "reasonably susceptible of being misinterpreted to lower the prosecution's burden of proof concerning robbery, especially when that instruction is viewed in light of all of the court's instructions."  (Resp't Ex. 6 at 15.)  This Court agrees with the state appellate court's conclusion, and declines to find that the challenged instruction by itself "so infected the entire trial that the resulting conviction violates due process."  Estelle, 502 U.S. at 72.  Jury instructions must be considered by a federal habeas court in their entirety, not in isolation.  Id. (quoting Cupp, 414 U.S. at 147).  Here, in accordance with CALCRIM No. 376, the trial court instructed that the jury "may not convict the Defendant of robbery" based solely on a finding that "the Defendant knew he possessed property" and that "the property had, in fact, been recently stolen."  (2RT 410.)  The trial court further instructed that the jury "may not convict the Defendant of any crime unless [it was] convinced that each fact essential to the conclusion that the Defendant is guilty of that crime has been proved beyond a reasonable doubt."  (2 RT 410-411.)  Additionally, the trial court instructed that "[a] defendant in a criminal case is presumed to be innocent," that the prosecution must "prove each element of a crime and special allegation beyond a reasonable doubt," and that the jury "must decide what the facts are in this case . . . us[ing] only on the evidence that was presented in this courtroom or during a jury view."  (2 RT 400.)

Viewing the instructions as a whole, there was no reasonable likelihood that the jury

misapplied CALCRIM No. 376 in a way that lessened the prosecution's burden of proof.  Therefore, the state appellate court reasonably rejected Petitioner's claim relating to CALCRIM No. 376. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims.

Furthermore, no certificate of appealability is warranted in this case.  See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition).  Petitioner has failed to make a substantial showing that any of his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

David B. Long, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 3/27/12

_Saundra B Armstrong_

SAUNDRA BROWN ARMSTRONG
United States District Judge

1
2
3
4
5    UNITED STATES DISTRICT COURT
     FOR THE
6    NORTHERN DISTRICT OF CALIFORNIA
7
8    ANASTACIO GUERRERO,
9                                                    Case Number: CV09-01305 SBA
10               Plaintiff,
                                                     **CERTIFICATE OF SERVICE**
11     v.
12
13   DEBRA H. DEXTER et al,
14               Defendant.
15   _____/
16
17   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.
18
19   That on March 29, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.
20
21
22
23
24   Anastacio Guerrero CDC F-51624
     Ironwood State Prison
25   P O Box 2199
26   Blythe, CA 92226
27
28   Dated: March 29, 2012
                                         Richard W. Wieking, Clerk
                                         By: Lisa Clark, Deputy Clerk

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28